**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| RICARDO A. GOMEZ <br> and DEBORA GOMEZ, <br> on behalf of plaintiffs and a class, | ) <br> ) <br> ) <br> ) | |
| Plaintiffs, | ) <br> ) <br> ) | 1:14-cv-9420 <br><br> Judge Andrea R. Wood |
| v. | ) <br> ) | Magistrate Judge Susan E. Cox |
| CAVALRY PORTFOLIO SERVICES, <br> LLC, and CAVALRY SPV I, LLC, | ) <br> ) <br> ) | |
| Defendants. | ) | |

**THIRD AMENDED COMPLAINT – CLASS ACTION**

**INTRODUCTION**

1.      Plaintiffs Ricardo A. Gomez and Debora Gomez bring this action to secure redress from unlawful credit and collection practices engaged in by defendants Cavalry SPV I, LLC ("Cavalry SPV") and Cavalry Portfolio Services, LLC ("CPS").

2.      Plaintiffs allege violations of the Fair Debt Collection Practices Act, 15 U.S.C. §1692 et seq. ("FDCPA") and the Fair Credit Reporting Act, 15 U.S.C. §1681 et seq. ("FCRA").

**VENUE AND JURISDICTION**

3.      This Court has subject matter jurisdiction under 28 U.S.C. §§1331 (general federal question), and 15 U.S.C. §§1681p (FCRA) and 1692k (FDCPA).

4.      Venue and personal jurisdiction in this District are proper because:

        a.      Defendants' collection communications and practices impacted plaintiff within this District; and

        b.      Each defendant does or transacts business within this District.

**PARTIES**

5.      Plaintiffs Ricardo Gomez and Debora Gomez are residents of Homer Glen, Illinois.

1

6.    Defendant CPS is a limited liability company chartered under Delaware law that does business in Illinois.  Its principal place of business is located at 4050 East Cotton Center, Building 2, Suite 20, Phoenix, AZ 85040.   Its registered agent and office is CT Corporation System, 208 S. LaSalle Street, Suite 814, Chicago, IL 60604.

7.    CPS is engaged in the business of a collection agency.

8.    CPS is a licensee under the Illinois Collection Agency Act, 225 ILCS 425/1 et seq.

9.    CPS has filed thousands of lawsuits in Illinois courts against Illinois residents.

10.    During the five month period between March 19, 2012 and August 21, 2012, CPS filed 1,000 lawsuits in the Circuit Court of Cook County, as well as other lawsuits in other Illinois courts.

11.    CPS uses the mails and telephone system in conducting its business.

12.    Cavalry SPV is a limited liability company also chartered under Delaware law that does business in Illinois.   Its principal place of business is located at 500 Summit Lake Drive #400, Valhalla, NY 10595. Its registered agent and office is CT Corporation System, 208 S. LaSalle Street, Suite 814, Chicago, IL 60604.

13.    Cavalry SPV is engaged in the business of purchasing or acquiring, or claiming to purchase or acquire, allegedly defaulted debts originally owed to others and incurred for personal, family, or household purposes.

14.    Cavalry SPV pays an average of less than 5 cents on the dollar for the debts it purchases or claims to purchase.

15.    CPS files lawsuits to collect the debts allegedly acquired by Cavalry SPV. The mails and telephone system are used in connection with such lawsuits.

16.    Cavalry SPV is a debt collector as defined in the FDCPA.

17.    CPS and Cavalry SPV are affiliates and are under common management and control.

2

## FACTS RELATING TO PLAINTIFFS

18.     Defendants have been attempting to collect from plaintiffs an alleged credit card balance incurred, if at all, for personal, family, or household purposes and not for business purposes.

19.     Defendants claim that the debt was charged off by the original creditor, Bank of America or FIA Card Services (hereinafter "BOA"), on July 31, 2009.

20.     Defendants have represented to credit bureaus that they acquired the debt in July 2011.

21.     Defendants claim that on July 31, 2009, the debt had a balance of $3,262.35 and bore interest at a variable annual percentage rate which at the time was 27.24%.

22.     On or about January 16, 2013, ACI sent, on behalf of Cavalry SPV I, LLC, and at the direction of CPS, the letter attached as Exhibit A, representing that the balance owed as of that date was $5,793.01.

23.     On or about March 27, 2013, Cavalry Portfolio Services, LLC, on behalf of Cavalry SPV I, LLC, sent plaintiffs the letter attached as Exhibit B, demanding payment of $6,244.19, or $451.18 more than Exhibit A.

24.     On or about March 21, 2014, Cavalry Portfolio Services, LLC, on behalf of Cavalry SPV I, LLC, sent plaintiffs' counsel the letter attached as Exhibit C, demanding payment of $6,320.13, or $75.94 more than Exhibit B and $3,057.78 more than the July 31, 2009 balance.

25.     Defendants report claimed debts to credit bureaus.

26.     Defendants report claimed debts to credit bureaus for the purpose of coercing payment of them.

27.     On May 12, 2014, plaintiffs, by counsel, sent the letter attached as Exhibit D to the three major credit bureaus (Exhibits A-C were enclosures).

28.     On information and belief, based on their later statements, the three credit bureaus

3

contacted defendant in the course of investigating plaintiffs' disputes.

29.     On information and belief, defendants responded to the three credit bureaus that the amount claimed was correct.

30.     Such statement was false.

31.     On information and belief, **Defendants were aware that reporting an amount including interest for a period of time after charge-off and before purchase of the debt was inappropriate.** Defendants were made aware of the problem by the widely publicized decision in McDonald v. Asset Acceptance LLC, 13 WL 4028947, which was rendered August 7, 2013, ten months prior to the inquiry in question. Additionally, Defendants were made aware by this Court that the addition of interest after charge-off was inappropriate by the decision rendered against them in *Simkus v. Cavalry Portfolio Services*, 2012 WL 1866542, on May 22, 2012, two years prior to the inquiry in question.

32.     As a result, the inflated amount remained on plaintiffs' credit reports, as illustrated by Exhibit E.

33.     On information and belief, the original creditor did not send any billing statements to plaintiff at any time between the date it charged off the account, July 31, 2009, and the date of the alleged sale to defendants, in July 2011.

34.     On information and belief, when the original creditor allegedly sold the debt to Cavalry SPV, the amount on the account was the charge-off amount.

35.     Between the date the account was charged off and the date BOA sold the account to Cavalry SPV, BOA waived all interest and finance charges on the account.

36.     After purchase, defendants added interest to the account for the period when BOA held the account that BOA had not added.

37.     Defendants added interest, not only for the period beginning after they purchased the account, but for the period after charge-off when BOA had waived all interest and finance charges on the account.

4

38.     Most of the debts which defendants seek to collect are delinquent credit card accounts formerly held by banks.

39.     Cavalry SPV often purchases, or claims to purchase, credit card debts from banks months or years after the bank has charged off the debts.

40.     Standard form credit card agreements used by banks provide that the terms of the agreement can be changed from time to time, and that changes beneficial to the consumer such as a reduction in or waiver of interest may be effected immediately and without notice.

41.     Charge-off means that the credit card receivable is no longer carried on the bank's books as an asset. Under federal regulations, a bank must charge off a credit card receivable after it has been delinquent 180 days; it may charge it off sooner. Federal Financial Institutions Examination Council, Uniform Retail Credit Classification and Account Management Policy, 65 FR 36903 (June 12, 2000).

42.     As a standard practice, and for a variety of sound business reasons, most banks, including BOA, waive interest on credit card debts after chargeoff for as long as the debts are held by the banks.

43.     Among other reasons for this practice, banks did not, and do not, want to increase the amount of bad debts on their books, for regulatory reasons.

44.     Prior to February 22, 2010 (when the regulation was amended), banks were required to issue periodic statements on an account until the bank "[deemed] it uncollectible," or instituted legal proceedings. 12 C.F.R. §226.5(b)(2). The addition of interest could be construed as meaning that the debt was *not* deemed uncollectible. See 26 C.F.R. §1.6050P-1. Most banks prudentially did not add interest to charged off debts.

45.     As amended, 12 C.F.R. § 226.5(b)(2) now requires banks to send periodic statements on all accounts, including defaulted accounts, for any period during which interest or fees are added to the account. 12 C.F.R.§226.5(b)(2)(I) ("A periodic statement need not be sent for an account if the creditor deems it uncollectible, if delinquency collection proceedings have been instituted, if the

5

creditor has charged off the account in accordance with loan-loss provisions and will not charge any additional fees or interest on the account. . . ."). Banks generally prefer to waive the interest and save the expense of preparing and sending statements.

46.     CPS, on behalf of Cavalry SPV, engages in a practice of adding interest to credit card debts after the assignor bank has waived the interest. Specifically, CPS adds interest for the period between chargeoff and the alleged purchase by Cavalry SPV.

47.     On information and belief, credit card issuers report the charge-off amount to credit reporting agencies. Cavalry SPV reports an amount that includes interest for the period of time after charge-off and prior to sale of the account to a debt purchaser. In both cases, the reporting is made to anyone who may see and use credit reports, including the consumer and other creditors.

48.     As a result of Defendants' behavior of adding interest to debts after assignor bank has waived the interest, Plaintiffs were damaged in that their credit was negatively impacted.

## COUNT I – FDCPA – CLASS CLAIM

49.     Plaintiffs incorporate paragraphs 1-48.

50.     The addition of unauthorized interest to debts is both a deceptive collection practice, in violation of 15 U.S.C. §§1692e, 1692e(2), 1692e(5), and 1692e(10), and an unfair collection practice, in violation of 15 U.S.C. §§1692f and 1692f(1).

51.      This claim is based solely upon the amount demanded in the letter sent on or about March 21, 2014.

52.     Section 1692e provides:

**§ 1692e.        False or misleading representations [Section 807 of P.L.]**

**A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt.  Without limiting the general application of the foregoing, the following conduct is a violation of this section: . . .**

**(2)        The false representation of--**

(A)    the character, amount, or legal status of any debt; . . .

(5)    The threat to take any action that cannot legally be taken or that is not intended to be taken. . . .

(10)    The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer. . . .

53.    Section 1692f provides:

§ 1692f.    Unfair practices [Section 808 of P.L.]

A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

(1)    The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law. . . .

## CLASS ALLEGATIONS

54.    Plaintiffs bring this claim on behalf of a class, pursuant to Fed.R.Civ.P. 23(a) and 23(b)(3).

55.    The class consists of (a) all individuals (b)with Illinois addresses (c) whose alleged debt was purchased by Cavalry SPV from Bank of America/FIA Card Services (d) to whose alleged debt Cavalry SPV or CPS added interest for a period prior to the alleged ownership of the debt by Cavalry SPV that had not been added by Bank of America/FIA Card Services at that time (e) where any document adding such interest or claiming the right to add such interest was sent or delivered to the individual or the individual's agent at any time during a period beginning one year prior to the filing of this action and ending 21 days after the filing of this action.

56.    The class members are so numerous that joinder of all members is not practicable.

57.    On information and belief, based on an electronic search of court dockets, there are at least 40 members of the class.

58.    There are questions of law and fact common to the class members, which

7

common questions predominate over any questions relating to individual class members. The predominant common questions are:

      a.    Whether a debt buyer can retroactively reverse the decision of a credit card issuer to not charge interest for a period when the debt is held by the issuer;

      b.    Whether defendants engage in a practice of adding or suing for such interest, or claiming the right to do so;

      c.    Whether such conduct violates the FDCPA.

59.    Plaintiffs' claim is typical of the claims of the class members. All are based on the same factual and legal theories.

60.    Plaintiff will fairly and adequately represent the class members. Plaintiff has retained counsel experienced in class actions and FDCPA litigation.

61.    A class action is superior for the fair and efficient adjudication of this matter, in that:

      a.    Individual actions are not economically feasible;

      b.    Members of the class are likely to be unaware of their rights;

      c.    Congress intended class actions to be the principal enforcement mechanism under the FDCPA.

WHEREFORE, the Court should enter judgment in favor of plaintiffs and the class and against defendants for:

      (1)    Statutory damages;

      (2)    Actual damages equal to any unauthorized interest paid;

      (3)    Attorney's fees, litigation expenses and costs of suit; and

      (4)    Such other and further relief as the Court deems proper.

## COUNT II – DECLARATORY AND EQUITABLE RELIEF – CLASS CLAIM

62.    Plaintiff incorporates paragraphs 1-48.

63.    Defendants CPS and Cavalry SPV regularly (a) add unauthorized interest to debts

8

(b) demand payment of such unauthorized interest and (c) on information and belief, report such unauthorized interest to credit bureaus.

## CLASS ALLEGATIONS

64.     Plaintiff brings this claim on behalf of a class, pursuant to Fed.R.Civ.P. 23(a) and 23(b)(3).

65.     The class consists of (a) all individuals (b) to whose alleged debt Cavalry SPV or CPS added interest for a period prior to the alleged ownership of the debt by Cavalry SPV that had not been added by the holder of the debt at that time.  Persons in Massachusetts are excluded.

66.     The class is so numerous that joinder of all members is not practicable.

67.     Based on a search of computerized court records, there are more than 500 persons meeting the above class definition.

68.     There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members.  The predominant common questions are:

        a.      Whether a debt buyer can retroactively reverse the decision of a credit card issuer to not charge interest for a period when the debt is held by the issuer;

        b.      Whether defendants engage in a practice of adding or suing for such interest, or claiming the right to do so;

        c.      Whether such conduct should be declared unlawful and enjoined.

69.     Plaintiff's claim is typical of the claims of the class members.  All are based on the same factual and legal theories.

70.     Plaintiff will fairly and adequately represent the class members. Plaintiff has retained counsel experienced in class actions and collection abuse litigation.

71.     A class action is superior for the fair and efficient adjudication of this matter, in that:

        a.      Individual actions are not economically feasible;

9

b.     Members of the class are likely to be unaware of their rights.

WHEREFORE, the Court should enter judgment in favor of plaintiff and the class and against defendants for:

(1)     A declaration that defendants may not add interest to a debt for a period prior to the alleged ownership of the debt by Cavalry SPV that had not been added by the holder of the debt at that time;

(2)     An injunction prohibiting defendants from demanding such interest or reporting such interest to credit bureaus;

(3)     Costs; and

(4)     Such other and further relief as is appropriate..

## COUNT III – FCRA CLAIM – INDIVIDUAL

72.     Plaintiffs incorporate paragraphs 1-48.

73.     Defendants violated the Fair Credit Reporting Act, 15 U.S.C. §1681s-2(b), by providing false information to the credit bureaus when they contacted defendants in response to plaintiffs' complaints.

74.     Section 1681s-2(b) provides:

**(b) Duties of furnishers of information upon notice of dispute.**

**(1) In general. After receiving notice pursuant to section 611(a)(2) [15 USC §1681i(a)(2)] of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall**

**(A) conduct an investigation with respect to the disputed information;**

**(B) review all relevant information provided by the consumer reporting agency pursuant to section 611(a)(2) [15 USC §1681i(a)(2)];**

**(C) report the results of the investigation to the consumer reporting agency; and**

**(D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the**

**information and that compile and maintain files on consumers on a nationwide basis.**

**(2) Deadline. A person shall complete all investigations, reviews, and reports required under paragraph (1) regarding information provided by the person to a consumer reporting agency, before the expiration of the period under section 611(a)(1) [15 USC §1681i(a)(1)] within which the consumer reporting agency is required to complete actions required by that section regarding that information.**

75.    Defendants committed such violations willfully or negligently, thereby violating 15 U.S.C. §1681n and/or §1681o.

76.    Section 1681n provides:

**§1681n.  Civil liability for willful noncompliance**

**(a) In general.  Any person who willfully fails to comply with any requirement imposed under this title  with respect to any consumer is liable to that consumer in an amount equal to the sum of–**

**(1)**

**(A) any actual damages sustained by the consumer as a result of the failure or damages of not less than $ 100 and not more than $ 1,000; or**

 **(2) such amount of punitive damages as the court may allow; and**

**(3) in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court. . . .**

77.    Section 1681o provides:

**§1681o.  Civil liability for negligent noncompliance**

**(a) In general.  Any person who is negligent in failing to comply with any requirement imposed under this title  with respect to any consumer is liable to that consumer in an amount equal to the sum of--**

**(1) any actual damages sustained by the consumer as a result of the failure;**

**(2) in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court.**

WHEREFORE, the Court should enter judgment in favor of plaintiffs and against

defendants for:

        a.      Statutory damages;

        b.      Punitive damages;

        c.      Actual damages;

        d.      Attorney's fees, litigation expenses and costs of suit; and

        e.      Such other and further relief as the Court deems proper.


            s/ Daniel A. Edelman
            Daniel A. Edelman

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Emiliya Gumin Farbstein
EDELMAN, COMBS, LATTURNER & GOODWIN, L.L.C.
20 S. Clark Street, Suite 1500
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX) (may be used for service of pleadings)
Email address for service: courtecl@edcombs.com

## NOTICE OF LIEN AND ASSIGNMENT

Please be advised that we claim a lien upon any recovery herein for 1/3 or such amount as a court awards.   All rights relating to attorney's fees have been assigned to counsel.


s/Daniel A. Edelman
Daniel A. Edelman


Daniel A. Edelman
EDELMAN, COMBS, LATTURNER
      & GOODWIN, LLC
20 S. Clark St., Suite 1500
Chicago, Illinois  60603
(312) 739-4200
(312) 419-0379 (FAX)

13

## DOCUMENT PRESERVATION DEMAND

Plaintiff hereby demands that defendant take affirmative steps to preserve all recordings, data, documents, and all other tangible things that relate to plaintiff, the events described herein, any third party associated with any telephone call, campaign, account, sale or file associated with plaintiff, and any account or number or symbol relating to them. These materials are likely very relevant to the litigation of this claim. If defendant is aware of any third party that has possession, custody, or control of any such materials, plaintiff demands that defendant request that such third party also take steps to preserve the materials. This demand shall not narrow the scope of any independent document preservation duties of the defendant.

s/ Daniel A. Edelman
Daniel A. Edelman

14

<u>CERTIFICATE OF SERVICE</u>

     I, Daniel A. Edelman, certify that on May 11, 2017, I caused a true and accurate copy of the foregoing document to be filed via the court's CM/ECF system which sent notification to all counsel of record.

<u>s/ Daniel A. Edelman</u><br>
Daniel A. Edelman

Daniel A. Edelman
Emiliya Gumin Farbstein
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
20 S. Clark Street, Suite 1500
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)