**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| RICARDO A. GOMEZ and DEBORA GOMEZ, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | |
| | ) | Case No. 1:14 cv 09420 |
| CAVALRY PORTFOLIO SERVICES, LLC, | ) | |
| and CAVALRY SPV I, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' MEMORANDUM OF LAW
IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Defendants Cavalry Portfolio Services, LLC ("CPS") and Cavalry SPV I, LLC ("Cavalry

SPV"), by counsel, submit this memorandum of law in support of their motion for summary

judgment.

**I.       INTRODUCTION**

Cavalry SPV purchased Plaintiffs' charged-off credit card account from Bank of

America and immediately assigned the account to its affiliate, Cavalry Portfolio Services, for

servicing and management. Cavalry Portfolio Services computed interest from the date of

charge-off through the date of sale, and added it to the account. Plaintiffs contend that this

practice—the inclusion of "unauthorized" interest—was unfair and deceptive under the

Fair Debt Collection Practices Act, 15 U.S.C. 1692 ("FDCPA"), because Bank of America

impliedly waived interest on the account when, at charge-off, it ceased mailing periodic

statements. The court need not at this juncture decide the implied waiver issue—which, at

any rate, is a disputed question of fact—as there are three other threshold grounds

warranting summary judgment in favor of Defendants as a matter of law independent of

the issue of implied waiver.

First, Cavalry SPV is a purchaser of non-performing consumer accounts, and is not a "debt collector" subject to the FDCPA. Second, Plaintiffs' claim is based solely on a validation response letter sent to plaintiff's counsel which is not a form of correspondence subject to the FDCPA. Third, the purported violation—the inclusion of "unauthorized" interest—occurred long before CPS sent Plaintiffs' lawyer the informational response letter, and long before they filed suit. Plaintiffs admit that they first noticed the "inflated" balance in letters they received as early as January 2013, and thus the statute of limitations expired in early 2014, more than nine months before the complaint was filed.

## II. STATEMENT OF UNDISPUTED MATERIAL FACTS

### A. Plaintiff's account with Bank of America

Plaintiffs (husband and wife) stopped making payments on their Bank of America ("BOA") credit card account (the "Account") in early 2009. (SUMF ¶ 10.) BOA charged-off the account six months later in July 2009. (SUMF ¶ 11.) At the time of charge-off, the balance due was $3,262.35. (SUMF ¶ 12.)

### B. Cavalry SPV purchases Plaintiffs' account and assigns it to CPS

In July 2011, BOA sold the Account to Cavalry SPV, and Cavalry SPV immediately assigned it to its affiliate, Cavalry Portfolio Services ("CPS"), for servicing and collection. (SUMF ¶ 13.) CPS computed interest on the Account at a rate of 24.99% from July 31, 2009 (the charge-off date), through July 21, 2011 (the date of sale), and then added that amount ($1,608.19) to the balance due at charge-off ($3262.35). (SUMF ¶¶ 14-15.) Thereafter, this post-chargeoff/pre-purchase interest ($1,608.19), plus accruing post-purchase interest, was always included as part of the balance due on the Account, beginning with the first letter sent in January 2013, as well as all subsequent letters. (SUMF ¶¶ 15-20.)

### C. Plaintiffs retain counsel to inquire about the account

Shortly after receiving a series of letters in 2013 in connection with the Account,

Plaintiffs engaged attorney John Antonopoulos to help validate the debt. (SUMF ¶ 23.) On

April 12, 2013, Antonopoulos sent CPS a letter the express purpose of which was to inform

CPS of his representation and to request debt validation:

> Please be advised that I represent Ricardo A. Gomez and Debora
> Gomez in connection with your claim identified on the attached
> reference sheet indicating that the original creditor was Bank of
> America.
>
> Please provide me with the necessary documentation verifying that
> the account has been assigned to you, which will authorize me to
> negotiate a settlement.

(SUMF ¶ 24.) CPS responded to the Antonopoulos letter approximately one year later.

(SUMF ¶ 25.) In the interim, CPS took no further action to collect on the Account. (SUMF ¶

28.) On March 21, 2014, CPS sent Antonopoulos a response, stating:

> Per your request, please find enclosed the verification of your client's
> debt. Your account is now subject to resumption of collection efforts.
> You may contact us at [phone number] from [time] Monday through
> Friday.
>
> Thank you for giving us the opportunity to address your client's
> concerns.
>
> Sincerely,
> Customer Service Department

(SUMF ¶ 25.) Plaintiffs' claim is based solely on this letter. (Compl. ¶ 51.) [1]

---

[1] All references to the Complaint are to the Third Amended Complaint. (Dkt. #99.)

### III.    CAVALRY SPV IS NOT A DEBT COLLECTOR

Preliminarily, Plaintiffs must establish the "threshold criteria" that Cavalry SPV is a

debt collector. *Gburek v. Litton Loan Servicing LP*, 614 F.3d 380, 384 (7th Cir. 2010). This is

because the FDCPA only regulates the conduct of debt collectors, which it defines as:

> Any person who uses any instrumentality of interstate commerce or
> the mails in any business the principal purpose of which is the
> collection of debts, or who regularly collects or attempts to collect,
> directly or indirectly, debts owed or due or asserted to be owed or due
> another. Notwithstanding the exclusion provided by clause (F) of the
> last sentence of this paragraph, the term includes any creditor who, in
> the process of collecting his own debts, uses any name other than his
> own which would indicate that a third person is collecting or
> attempting to collect such debts.

15 U.S.C. §1692a(6). In other words, "this provision defines a debt collector as (1) a person

whose *principal purpose* is to collect debts; (2) a person who *regularly* collects debts *owed*

*to another;* or (3) a person who collects *its own debts,* using *a name other than its own* as if

it were a debt collector." *Henson v. Santander Consumer USA, Inc.*, 817 F.3d 131, 136 (4th

Cir. 2016), *affirmed* 528 U.S. __ (2017). It is undisputed that Cavalry SPV's principal

purpose is not to collect debts; it does not (regularly or otherwise) collect debts owed to

another; and it does not collect its own debts using a name other than its own.

In *Henson*, CitiFinancial loaned money to Henson to buy a car; Henson later

defaulted; Santander purchased the defaulted loan and sought to collect in ways that

Henson found troublesome. *Henson v. Santander Consumer USA, Inc.*, 528 U.S. __ (2017).

The Supreme Court affirmed the Fourth Circuit's conclusion that Santander didn't qualify

as a debt collector because it did not seek to collect a debt "owed another" but sought

instead to collect a debt it purchased and owned. The facts here are even more attenuated:

the only evidence is that Cavalry SPV invests in portfolios of nonperforming consumer

receivables, but does not itself collect on the portfolios. (SUMF ¶ 3.) Its affiliate, Cavalry

Portfolio Services, is the entity that actually services, manages and collects on the accounts.

(SUMF ¶ 4.) Because it is undisputed that SPV is *not* a debt collector, summary judgment

must be entered in its favor. *See Henson*, 582 U.S. __ (explaining that the FDCPA applies only

to debt collectors, not debt purchasers).

**IV.    THE RESPONSE LETTER IS NOT A COLLECTION COMMUNICATION**

Because CPS was responding to Plaintiffs' counsel's request for verification, and

because the response was not meant to induce payment, the FDCPA is not triggered, and

judgment should be entered in Defendants' favor. The FDCPA does not automatically apply

to every communication from a debt collector. *Gburek v. Litton Loan Servicing LP*, 614 F.3d

380, 384 (7th Cir. 2010). It applies only to communications made in connection with the

actual collection of a debt for which the "animating purpose" is to induce payment. *Grden v.*

*Leikin Ingber & Winters PC*, 643 F.3d 169, 173 (6th Cir. 2011). Whether a communication is

sent in connection with a collection attempt is a question of objective fact. *Ruth v. Triumph*

*Partnerships*, 577 F.3d 790, 798 (7th Cir. 2009). And because the letter was sent to counsel,

and not the presumptively "unsophisticated" consumer, the standard is whether a

"competent lawyer" would have believed it was an attempt to collect a debt. *See Evory v. RJM*

*Acquisitions Funding LLC*, 505 F.3d 769, 774 (7th Cir. 2007); *Caprel v. Specialized Loan*

*Servicing, Inc.*, 2016 WL 4678313, at *3-4 (N.D. Ill. Sept. 7, 2016).

Antonopoulos sent CPS a letter on April 12, 2013, requesting "the necessary

documentation verifying that the account has been assigned to [CPS]," which would then

authorize him to negotiate a settlement. (SUMF ¶ 24.) On March 21, 2014, CPS replied,

explaining that "per your request, please find enclosed the verification of your client's

5

debt." (SUMF ¶ 25.) In *Goodson v. Bank of America, N.A.*, the Sixth Circuit explained that a letter sent in response to a consumer inquiry is not intended to induce payment, but to respond to that inquiry; that where "communications are merely a ministerial response to a debtor inquiry, rather than part of a strategy to make payment more likely," inducing payment is not an "animating purpose." 600 Fed. Appx. 422, 431-32 (6th Cir. 2015). The Seventh Circuit has likewise cautioned that the entire purpose and context of a letter must be examined when evaluating whether the FDCPA applies. *Gburek*, 614 F.3d at 384-86. And here it is undisputed that CPS's letter was sent in response to Plaintiffs' counsel's request for validation.

Antonopoulos was specifically engaged by Plaintiffs to seek information and clarification from CPS regarding their Account. (SUMF ¶ 23.) CPS's response did not contain a payment coupon, a demand for payment, or any discussion of settlement of the debt, nor did it list options for payment.[2] (SUMF ¶¶ 25, 27.) Indeed, there had been no attempts to collect on the Account in almost a year. (SUMF ¶ 28.) It is indisputable that the reason for the letter was to validate the debt and provide information "per your request." Tellingly, Antonopoulos himself did not consider CPS's letter to be a collection attempt, and Plaintiffs cannot point to any evidence that could lead the Court to conclude that the presumptive "competent lawyer" would have believed it was anything other than an informational response. Because no reasonable jury "could find that an animating purpose of the

---

[2] The fact that the letter includes standard disclaimer language at the bottom (i.e. "this is an attempt to collect a debt") cannot itself transform what is otherwise an informational notice into debt collection activity. Courts that have addressed this issue have found that identical disclaimers are "legally irrelevant" for purposes of determining whether the FDCPA applies to the communication. *Gburek*, 614 F.3d at 386 n.3; *Maynard v. Cannon*, 401 Fed. Appx. 389 (10th Cir. 2010); *Goodson*, 600 Fed. Appx. at 432.

[communication] was to induce payment," summary judgment is appropriate. *Grden*, 643 F.3d at 173.

Exempting purely informational letters from the purview of the FDCPA makes sense. If responding to a request for debt verification could revive an otherwise time-barred claim, the benefit of a statute of limitations would be frustrated, as a consumer could concoct an FDCPA claim at any time, regardless of how aged the purported violation might be, simply by requesting information regarding a debt and then waiting for a response. To hold otherwise would be to "permit a debtor to manufacture collection activity simply by submitting an inquiry in response to an informational communication," which would thwart the important distinction between collection activity on the one hand and informational correspondence on the other—a distinction that the FDCPA seeks to preserve. *Goodson*, 600 Fed. Appx. at 433.

## IV. PLAINTIFFS' CLAIM IS BARRED BY THE STATUTE OF LIMITATIONS

Even if Plaintiffs' claim was otherwise subject to the FDCPA, it is time-barred because the alleged violation—the inclusion of "unauthorized" interest—occurred more than one year before Plaintiffs filed suit. A plaintiff must bring an FDCPA claim "within one year from the date on which the violation occurs." 15 U.S.C. §1692k(d). The limitations period begins to run "upon injury." *Limestone Dev. Corp. v. Vill of Lemont*, 520 F.3d 797, 801 (7th Cir. 2008). Courts must look to the "specific violations alleged" when determining the date upon which the violation occurred. *Lockhart v. HSBC Finance Corp.*, 2014 WL 3811002, *9 (N.D. Ill. Aug. 1, 2014). When a purported FDCPA violation is premised upon collection letters, the statute of limitations begins to run on the date the letter was mailed. *Malloy v. Phillips*, 64 F.3d 607 (11th Cir. 1995)(the date of mailing is the last opportunity for the debt

collector to comply with the FDCPA); *Mattson v. U.S. West Commc'ns, Inc.,* 967 F.2d 259, 261 (8th Cir. 1992)("The date on which [defendant] mailed the letters was its last opportunity to comply with the FDCPA, and the mailing of the letter, therefore triggered section 1692k(d)"); *Benzemann v. Citibank N.A.*, 2014 WL 2933140, *7 (S.D.N.Y. June 27, 2014)("it is therefore the debt collector's alleged violation that triggers the FDCPA statute of limitations, not the awareness of the plaintiff").

Here, Plaintiffs' claim is based entirely on the CPS's addition and attempted collection of interest that accrued on the Account after it was charged off but before it was acquired by Cavalry SPV. At the time Plaintiffs' account was charged off, the principal balance owed was $3262.35. (SUMF ¶ 12). Cavalry SPV purchased the Account on July 21, 2011, and immediately assigned it to CPS. (SUMF ¶ 13) On that same date, CPS computed interest on the Account at a rate of 24.99% from July 31, 2009 (the charge-off date), through July 21, 2011 (the sale date), totaling $1609.19 (post-chargeoff/pre-purchase interest). (SUMF ¶¶ 14-15.) So on July 21, 2011, when the account was sold to SPV and assigned to CPS, Plaintiffs owed $4870.54, equal to the principal balance ($3262.35) plus the post-chargeoff/pre-purchase interest amount ($1608.19). (SUMF ¶ 15.) Plaintiffs received a letter on or about January 16, 2013, reflecting an outstanding balance due of $5793.01, and another letter dated March 27, 2013, reflecting an outstanding balance due of $6244.19. (Compl., Ex. A and B; SUMF ¶¶ 16, 19.) In both letters, the balance due was comprised of the principal balance ($3262.35), plus the post-chargeoff/pre-purchase interest ($1608.19), plus additional post-purchase interest that had accrued since CPS began servicing the Account. (SUMF ¶¶ 16-20.)

In other words, Plaintiffs were on notice from the very first communication in January 2013 that the amount being collected included "unauthorized" interest—which is the sole basis for their claim. Any complaint concerning the propriety of this interest under the FDCPA had to have been filed in January 2014. But Plaintiffs filed their action in November 24, 2014, more than 9 months after the statute of limitations had expired.

To get around this, Plaintiffs contend that a "new" violation occurred when CPS replied to the Antonopoulos letter on March 21, 2014. (Compl., ¶¶24, 51.) As explained above, this letter is not subject to the FDCPA. But even if it were, it is merely a new communication regarding an old claim and does not start a new limitations period. Courts have explained that "new communications"—like CPS's March 21, 2014, letter sent within the limitations period—"do not start a new period of limitations." *See, e.g.*, *Nutter v. Messerli & Kramer, P.A.,* 500 F. Supp. 2d 1219, 1223 (D. Minn. 2007); *Fraenkel v. Messerli & Kramer, P.A.*, 2004 WL 1765309, at *3-4 (D. Minn. Jul. 29, 2004)(alleged violation "accrued" before limitations period, and was thus time-barred regardless of later communications); *Sierra v. Foster & Garbus*, 48 F. Supp. 2d 393, 395 (S.D. N.Y. 1999)(filing of complaint was "new communication" concerning old violation); *Cutler v. Sallie Mae, Inc.*, 2015 WL 1909482, at *6-7 (C.D. Cal. April 24, 2015)(FDCPA claims were time-barred because, to hold otherwise, "would allow Plaintiff's cause of action to be kept alive indefinitely because each new communication would start a fresh statute of limitations"); *Wirtz v. JPMorgan Chase Bank, N.A.*, 2016 WL 2642999, at *4 (D. Minn. May 9, 2016)(applying "new communication" rule and finding FDCPA claim time-barred); *Fontell v. Hassett*, 870 F. Supp. 2d 395, 404 (D. Md. 2012)(dismissing FDCPA claim, finding "although each notice was undoubtedly unique in that Plaintiff's initial assessment continued to accrue late fees, the notices all related to

9

collection of the same underlying debt," and any action regarding the first collection notice was time-barred).

The case of *Sosa v. Utah Loan Servicing, LLC* is directly on point. In *Sosa*, the plaintiffs claimed the defendants violated the FDCPA by mailing several letters seeking to collect a mortgage debt that the plaintiffs alleged they did not owe. 2014 WL 173522, at *2 (S.D. Cal. Jan. 10, 2014). Though the exact balances and demands "varied from letter to letter," the court held that the statute of limitations began to run when the first letter was mailed, as that was the moment "Plaintiffs first knew or had reason to know of the alleged misconduct that serves as the basis of this action"—namely, that the defendants were seeking to collect a debt that plaintiffs alleged they did not owe. *Id.* at *3. The Court explained, "[the statute of limitations] does not begin, as Plaintiffs argue, at some point of Plaintiffs' choosing just because a letter addressing the same alleged misconduct was sent within the last year." *Id*. Plaintiff's "injury" occurred upon the mailing of the first letter seeking to collect the debt— and that "injury" occurred outside the limitations period. *Id.*; *see also Hua v. PHH Mortgage*, 2015 WL 5722610, at *4 (D.N.J. Sept. 29, 2015)(plaintiff alleged unauthorized fees and charges were contained in her monthly mortgage statements; court dismissed FDCPA claims because each statement "concern[ed] an existing debt, the amount of which, according to Plaintiff herself, ha[d] been inaccurate since at least 2011 or 2012," meaning each subsequent communication concerned a time-barred violation); *Reese v. JPMorgan Chase & Co.*, 686 F. Supp. 2d 1291, 1307 (S.D. Fla. 2009)(court dismissed FDCPA claims as time-barred where plaintiff knew of alleged inaccuracies almost two years before filing suit); *Wilhelm v. Credico Inc.*, 455 F. Supp. 2d 1006, 1009 (D. N.D. 2006)(FDCPA claim was time-barred where plaintiff sent letter disputing debt more than a year before filing suit;

10

limitations period was not extended by defendant's continued reporting of debt to credit reporting agency).

Here, Plaintiffs' FDCPA claim is based solely on a single and specific allegation: that "unauthorized interest" was added at the time Cavalry SPV purchased their Account and assigned it to CPS. If Defendants violated the FDCPA—which they deny—the violation would have occurred, if at all, *at the time the interest was added* and communicated to Plaintiffs in that first January 2013 letter. The fact that the same supposedly "unauthorized" interest was included in a later communication to Plaintiffs does not magically revive their claim.

**V.      CONCLUSION**

Recognizing as they must that Defendants had the right to charge interest after purchase, Plaintiffs' FDCPA claim is based solely on the allegation that Defendants added "unauthorized" pre-purchase interest to their Account. (Compl. ¶¶ 50-51.) Cavalry SPV is not a debt collector subject to the FDCPA so judgment should be entered in its favor on this ground alone. But even assuming *arguendo* that Cavalry Portfolio Services violated the FDCPA, it did so *at the time interest was added*, and Plaintiffs admit that they knew of that addition more than a year before they filed suit. To get around this, Plaintiffs attempt to rely solely on the validation letter CPS sent to their counsel within the limitations period. But on its face, CPS's response was not an attempt to collect a debt, nor was its "animating purpose" to induce Plaintiffs to pay (and if anything it was merely a new communication that referred to a prior violation). The FDCPA does not apply to purely informational letters responding to consumer inquiries and judgment should be entered in favor of Defendants.

11

Respectfully submitted,

CAVALRY PORTFOLIO SERVICES, LLC
and CAVALRY SPV I, LLC,

By:  */s/ Matthew O. Stromquist*
One of their Attorneys

Anna-Katrina S. Christakis
Matthew O. Stromquist
Pilgrim Christakis LLP
321 North Clark Street, 26th Floor
Chicago, Illinois 60654
(312) 939-0953

12

## CERTIFICATE OF SERVICE

Matthew O. Stromquist, an attorney, certifies that on July 7, 2017, he electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following:.

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Rebecca A. Cohen
EDELMAN, COMBS, LATTURNER &
GOODWIN, LLC
20 S. Clark Street, Suite 1500
Chicago, IL 60603
courtecl@edcombs.com

*/s/ Matthew O. Stromquist*