**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

RICARDO A. GOMEZ and )
DEBORA GOMEZ, )
          )
      Plaintiffs, )
          )     No. 14-cv-09420
    v. )
          )     Judge Andrea R. Wood
CAVALRY PORTFOLIO SERVICES, LLC )
and CAVALRY SPV I, LLC, )
          )
      Defendants. )

## MEMORANDUM OPINION AND ORDER

This case concerns communications by Defendants Cavalry Portfolio Services, LLC ("CPS") and Cavalry SPV I, LLC ("Cavalry SPV") to Plaintiffs Ricardo Gomez and Debora Gomez regarding their defaulted credit card debt. Plaintiffs claim that Defendants violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, by misrepresenting the amount of Plaintiffs' debt. Now before the Court are the parties' cross-motions for summary judgment. For the reasons explained below, Plaintiffs' motion for summary judgment (Dkt. No. 105) is denied and Defendants' motion for summary judgment (Dkt. No. 108) is granted.

## BACKGROUND

Unless otherwise noted, the following facts are undisputed.

Plaintiffs opened a credit card account sometime in 1996. This account was subsequently owned and serviced by FIA Card Services, a subsidiary of Bank of America ("BOA"). (Pls.' R. 56.1 Resp. ¶ 8, Dkt. No. 119; Defs.' R. 56.1 Resp. ¶ 11, Dkt. No. 124.) At some point in 2009, Plaintiffs stopped making payments on their credit card account and it went into default. (Pls.' R. 56.1 Resp. ¶ 10.) The account was eventually charged off by BOA in July of 2009. (*Id.* ¶ 11.) At

the time of the charge-off the amount due on the account was $3,262.35. (*Id.* ¶ 12.) As part of a policy implemented in 2007, BOA did not compute or track interest on an account after it was charged off. (Defs.' R. 56.1 Resp. ¶¶ 15, 20.) BOA also did not send regular billing statements to holders of charged-off accounts. (*Id.* ¶ 17.) Two years after BOA charged off Plaintiffs' account, on July 21, 2011, BOA sold the account to Cavalry SPV, which immediately assigned it to CPS for servicing and collection. (Pls.' R. 56.1 Resp. ¶ 13.)

After being assigned the debt, CPS computed and added post-charge-off, pre-purchase interest to the account—more plainly, it added two years' worth of interest that BOA had not computed or tracked while it held the debt. CPS added $1,608.19 of interest to the original $3,262.35 owed on the account, for a total of $4,870.54 due at the time Defendants purchased the account. (Pls.' R. 56.1 Resp. ¶ 15.) On January 16, 2013, Plaintiffs were sent a collection letter with respect to their account; by this time, additional interest had accrued such that the outstanding balance had grown to $5,793.01. (*Id.* ¶ 16.) [1] On March 27, 2013, CPS sent another letter to Plaintiffs, this time reflecting a $6,244.19 balance due because of additional interest charges. (*Id.* ¶¶ 19, 20.) On April 13, 2013, Plaintiffs' counsel sent CPS a letter informing it that he represented Plaintiffs and requesting debt validation so that he could negotiate a settlement. (*Id.* ¶ 24.) [2] CPS responded to the letter on March 21, 2014, stating:

> Per your request, please find enclosed the verification of your client's debt. Your account is now subject to resumption of collection efforts. You may contact us at [phone number] from [time] Monday through Friday.

---

[1] The parties do not dispute that Defendants computed and added to Plaintiffs' outstanding balance the interest amounts indicated in their correspondence. For obvious reasons, Plaintiffs do not admit they actually owe the post-charge-off, pre-purchase interest amounts.

[2] While the parties appear to agree that the quoted language accurate reflects that in the April 13 letter, Plaintiffs deny that the letter was sent for any purpose other than negotiating a settlement.

(*Id.* ¶ 25.) CPS's response letter did not contain a payment coupon or any discussion of settlement of the debt, nor did it provide payment options. (*Id.* ¶ 27.)

On November 24, 2014, Plaintiffs filed the present putative class action lawsuit. Plaintiffs allege that Defendants violated the FDCPA by adding interest to credit card debts after the assignor bank had waived that interest.[3] The parties have now filed cross-motions for summary judgment. In their motion, Plaintiffs argue that they are entitled to summary judgment because the undisputed facts show: (1) BOA waived its right to collect post-charge-off, pre-sale interest, (2) this waiver barred Defendants from imposing post-charge-off, pre-sale interest, and (3) Cavalry violated the FDCPA by adding post-charge-off, pre-sale interest, thereby misrepresenting the amount Plaintiff owed. For their part, Defendants contend that the Court should grant summary judgment in their favor because: (1) Cavalry SPV is not a debt collector, (2) Plaintiffs' claim is barred by the statute of limitations, and (3) the response letter is not a collection communication.

## DISCUSSION

Summary judgment is appropriate if the admissible evidence considered as a whole shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law, even after all reasonable inferences are drawn in the nonmovant's favor. *Dynegy Mktg. & Trade v. Multiut Corp.*, 648 F.3d 506, 517 (7th Cir. 2011). When cross-motions for summary judgment are filed, inferences are drawn in favor of the party against which the motion under consideration is made. *Siliven v. Ind. Dep't of Child Servs.*, 635 F.3d 921, 925 (7th Cir. 2011).

---

[3] Plaintiffs' Third Amended Complaint also contained a claim under the Fair Credit Report Act, 15 U.S.C. §1681 *et seq*. After summary judgment briefing, however, Plaintiffs stipulated to the dismissal of that claim. (Dkt. No. 137.)

"[T]he primary goal of the FDCPA is to protect consumers from abusive, deceptive, and unfair debt collection practices, including threats of violence, use of obscene language, certain contacts with acquaintances of the consumer, late night phone calls, and simulated legal process." *Bass v. Stolper, Koritzinsky, Brewster & Neider, S.C.*, 111 F.3d 1322, 1324 (7th Cir. 1997). In particular, Section 1692e of the FDCPA prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. The provision's text sets forth a nonexhaustive list of prohibited practices, including "[t]he false representation of . . . the character, amount, or legal status of any debt," 15 U.S.C. § 1692e(2)(A), "[t]he threat to take any action that cannot legally be taken or that is not intended to be taken," *id.* § 1692e(5), and "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer," *id.* § 1692e(10).

## I. Waiver

Plaintiffs' FDCPA claim stems from BOA's alleged waiver of its right to post-charge-off interest prior to selling the account to Defendants. Plaintiffs argue that BOA waived all post-charge-off interest on their account, and consequently Defendants, as assignees, did not have the right to charge and collect such interest. Therefore, when Defendants sent letters to Plaintiffs that included the post-charge-off, pre-sale interest as part of the debt owed, Defendants were misrepresenting the amount Plaintiffs' owed on their account.

As an initial matter, according to Plaintiffs, Illinois choice-of-law rules control the issue of whether BOA waived its right to collect post-charge-off interest.[4] Defendants disagree, contending that a full choice-of-law analysis is necessary to decide which state's law applies to

---

[4] Plaintiffs alternatively argue that North Carolina common law should apply because BOA is headquartered in this state. Without a more substantive argument for why North Carolina law should apply, the Court will not apply this state's legal principles over Illinois legal principles.

the question of waiver. At this point in the case, however, Defendants have acquiesced to the application of Illinois law. "The choice of law issue may be waived . . . if a party fails to assert it." *McCoy v. Iberdroia Renewables, Inc.*, 760 F.3d 674, 684 (7th Cir. 2014). When no party raises the choice of law issue, the federal court may simply apply the forum state's substantive law. *See Camp v. TNT Logistics Corp.*, 553 F.3d 502, 505 (7th Cir. 2009). Defendants benefited from the Court's application of Illinois law at the motion to dismiss stage, during which the Court dismissed one of Plaintiffs' state law claims for failure to state a claim. Additionally, despite the fact that Plaintiffs' original complaint contained an Illinois state law claim, Defendants never argued that a different state's substantive law should apply. Only now, over three years into the litigation, do Defendants raise the choice-of law-issue. The Court will not allow Defendants to raise the choice of law issue at this late stage in the litigation. With Defendants having acquiesced to the application of Illinois law.

In Illinois, "[w]aiver may be made by an express agreement or it may be implied from the conduct of the party who is alleged to have waived a right." *Ryder v. Bank of Hickory Hills*, 585 N.E.2d 46, 49 (Ill. 1991). Here, Plaintiffs argue that BOA impliedly waived its right to impose post-charge-off interest on their account. "Implied waiver of a legal right must be proved by a clear, unequivocal, and decisive act of the party who is alleged to have committed waiver." *Id.* "An implied waiver may arise where a person against whom the waiver is asserted has pursued such a course of conduct as to sufficiently evidence an intention to waive a right or where his conduct is inconsistent with any other intention than to waive it." *Kane v. Am. Nat. Bank & Tr. Co.*, 316 N.E.2d 177, 182 (Ill. App. Ct. 1974). Plaintiffs have the burden of proving that BOA waived its right to impose post-charge-off interest. *Id.* "Where there is no dispute as to the material facts and only one reasonable inference can be drawn therefrom, it is a question of law

whether the facts proved constitute waiver." *Delta Consulting Grp., Inc. v. R. Randle Const.,
Inc.*, 554 F.3d 1133, 1140 (7th Cir. 2009). But if the facts are disputed or if reasonable minds
might differ as to the inferences to be drawn from the undisputed evidence, then the waiver issue
becomes a question of fact not appropriate for summary judgment. *Id.*

Plaintiffs argue that BOA's actions following the charge off of Plaintiffs' account clearly
demonstrate waiver. Plaintiffs note that BOA's decision not to charge interest was no mere
accident or oversight, but instead, as a BOA representative testified, part of a broader policy to
stop tracking and computing post-charge-off interest that BOA implemented in 2007.[5] The BOA
representative also testified, however, that their cardholder agreements typically state that BOA's
failure to exercise any of its rights under the agreement does not waive those rights in the future.
Defendants argue that based on this testimony, BOA clearly did not intend to give up the right to
charge interest simply because it chose not to exercise the right to do so. The Court does not find
this argument persuasive. While the cardholder agreement may entitle BOA or its assignee to
impose interest in the future, the fact that BOA chose not to charge interest for two years (and it
consciously made that decision as part of a broader policy) indicates that it intended to waive its
right to collect this post-charge-off interest retroactively.

BOA's implied waiver of the right to charge interest on Plaintiffs' account retroactively
is further evidenced by the fact that BOA did not send periodic account statements to Plaintiffs.
Federal regulations require banks to send periodic statements on all accounts, including defaulted
accounts, for any period during which interest or fees are charged on the account. 12 C.F.R.
§ 1026.5(b)(2). BOA chose to stop sending financial statements after accounts were charged off

---

[5] Plaintiffs also claim that BOA decided to stop charging interest after an account was charged off in
order to be more customer friendly. But the portion of the transcript cited by Plaintiffs does not support
this assertion.

for financial reasons—namely, it did not make sense to expend resources on periodic statements for an account that was already written off. This business choice reflects a conscious decision to forego interest rather than continue to pay for periodic statements. Defendants argue that the cessation of monthly statements has no bearing on whether a creditor has waived its right to seek interest. But the Illinois cases to which Defendants point in support of their argument are inapposite. *See Terech v. First Resolution Mgmt. Corp.*, 854 F. Supp. 2d 537, 543 (N.D. Ill. 2012) (holding that "periodic statements (or lack thereof) add nothing to the inquiry into whether U.S. Bank applied interest to Plaintiff's account after August 2004"); *Index Futures Grp., Inc. v. Schmidt*, No. 92-cv-4353, 1997 WL 109978, at *1 (N.D. Ill. Mar. 7, 1997) (holding that clearing merchant did not waive the right to the debited balance on the defendant's account, even though the merchant sent a statement to defendant that showed his balance as zero).

Given the evidence presented, Plaintiffs have demonstrated that there is no genuine issue of material fact as to BOA's waiver of its right to charge and collect post-charge-off interest.[6] As the assignee, Defendants only acquired the rights that BOA had as of the date of assignment. *Collins Co. v. Carboline Co.*, 532 N.E.2d 834, 839 (Ill. 1988) ("Once made, an assignment puts the assignee into the shoes of the assignor."). Since BOA waived its right to post-charge-off, pre-sale interest, Defendants did not acquire the right to this interest and could not seek it from Plaintiffs.

---

[6] Defendants argue, alternatively, that a waiver of a contract right must be supported by consideration or detrimental reliance. Defendants do not cite any authority applying Illinois state law to support this assertion. Indeed, relevant case law states that a waiver of contractual rights does not "require special tokens of reliability," such as consideration or reliance, and instead "can be implied as well as expressly-implied from words or actions consistent with the assertion of those rights." *See Cole Taylor Bank v. Truck Ins. Exch.*, 51 F.3d 736, 739 (7th Cir. 1995) (citing *Ryder v. Bank of Hickory Hills*, 585 N.E.2d 46, 49 (Ill. 1991)).

7

## II.    Cavalry SPV's Status as a Debt Collector

Even if Defendants improperly sought post-charge-off, pre-sale interest, the FDCPA only regulates such behavior if Defendants are debt collectors. The FDCPA defines a debt collector as any person who "uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts" or who "regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). "Stated more simply, this provision defines a debt collector as (1) a person whose **principal purpose** is to collect debts; (2) a person who **regularly** collects debts **owed to another**; or (3) a person who collects **its own debts**, using **a name other than its own** as if it were a debt collector." *Henson v. Santander Consumer USA, Inc.*, 817 F.3d 131, 136 (4th Cir. 2016) (emphasis in original). "A debt collector should not be able to avoid liability for unlawful debt collection practices simply by contracting with another company to do what the law does not allow it to do itself." *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 325 (7th Cir. 2016). However, "a company that is not a debt collector would not ordinarily be subject to liability under the Act at all." *Id.*

Here, Cavalry SPV argues that it is a purchaser of non-performing consumer accounts, not a debt collector, and therefore not covered by the FDCPA. According to Cavalry SPV, CPS is the entity that actually collects debts. Where "the party seeking to collect a debt did not originate it but instead acquired it from another party," the party's FDCPA debt-collector status depends on whether the debt was in default at the time acquired. *Ruth v. Triumph P'ships*, 577 F.3d 790, 796 (7th Cir. 2009). This distinction is made because "[t]he purchaser of an already-defaulted debt—like the debt collector, and unlike the originator and servicer of a non-defaulted debt—has no ongoing relationship with the debtor and, therefore, no incentive to engender good

8

will by treating the debtor with honesty and respect." *Id.* at 797. Consequently, a party that attempts to collect a debt that was in default when purchased is a debt collector under the FDCPA. Here, Cavalry SPV purchased Plaintiffs' debt two years after the account was charged off—in other words, Cavalry SPV acquired the debt long after it went into default. Because Cavalry SPV is seeking to collect on a defaulted debt, it is a debt collector under the FDCPA.[7]

### III.    Statute of Limitations

Finally, Defendants argue that even if they acted as debt collectors and violated the FDCPA, Plaintiffs' claim still fails because they did not file this lawsuit within the statute of limitations period.

A plaintiff must bring an FDCPA claim "within one year from the date on which the violation occurs." 15 U.S.C. § 1692k(d). The limitations period "begins to run upon injury . . . and is not tolled by subsequent injuries." *Limestone Dev. Corp. v. Vill. of Lemont, Ill.*, 520 F.3d 797, 801 (7th Cir. 2008). A violation of § 1692k(g) occurs—and the statute of limitations begins to run—when an illegal debt collection activity takes place. It is generally accepted that when an FDCPA case is premised upon a collection letter, the violation occurs when the debt collector mails the letter. *See Freidman v. Anvan Corp.*, No. 97-cv-02364, 1998 WL 559779, at *2 (N.D. Ill. Aug. 28, 1998) ("As to the first issue, virtually every court that has substantively addressed the issue has ruled that, under the FDCPA, the violation occurs when the debt collector mails the letter.").

Plaintiffs' FDCPA claim here is based on Defendants' attempt to apply retroactively two years' worth of interest that BOA waived. Defendants, through a third-party collector, sent a collection letter to Plaintiffs on January 16, 2013 informing Plaintiffs that they owed

---

[7] Defendants also argue that certain documents attached to Plaintiffs' response should be stricken because this briefing is the first time they were produced. The Court did not rely on those documents or the arguments related to them in considering the summary judgment motions.

$5,793.01—an amount that included interest from the two years between when BOA charged off the account and when it eventually sold the account to Cavalry SPV. (Pls.' Resp. to Defs.' 56.1 Stmt. ¶¶ 16, 17.) Therefore, by January 2013, Plaintiffs were on notice that Defendants, through a representative, were trying to collect allegedly unauthorized interest. Defendants subsequently sent a second collection letter on March 27, 2013, reflecting an increased balance of $6,244.19, which included additional interest charges. (*Id.* ¶ 19.) Nonetheless, Plaintiffs filed their lawsuit on November 24, 2014, well after the statute of limitations had expired.[8]

Plaintiffs counter, however, that a new violation occurred during the limitations period. On April 12, 2013, Plaintiffs' attorney sent CPS a letter requesting that they provide documentation verifying that Plaintiffs' BOA account had been assigned to CPS. (*Id.* ¶ 24.) According to Plaintiffs, Defendants were required by law to pause collection efforts after Plaintiffs' attorney requested verification of the debt. *See* 15 U.S.C. § 1692g(b) ("If the consumer notifies the debt collector in writing . . . that the debt, or any portion thereof, is disputed . . . the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment."). CPS responded to the letter on March 21, 2014 with the following response:

> Per your request, please find enclosed the verification of your client's debt. Your account is now subject to resumption of collection efforts. You may contact us at [phone number] from [time] Monday through Friday.

(*Id.* ¶ 25.) Plaintiffs argue that the clear implication of this letter is to invite the recipient to call CPS to facilitate collection efforts. However, even if this letter was sent to induce payment, it only violates the FDCPA if it constitutes "any false, deceptive or misleading representation or means." 14 U.S.C. § 1692e. On its face, there is nothing in the letter that can be considered false,

---

[8] The Court previously granted Defendants' motion to dismiss claims arising from the January and March 2013 letters due to the running of the statute of limitations. (Order on Mot. to Dismiss at 2–3, Dkt. No. 69.)

deceptive, or misleading. The only thing the letter says about Plaintiffs' debt is that it is "subject to the resumption of collection efforts." This sentence does not tell the reader anything about what kind of debt it is, and it certainly does not indicate that Defendants are including post-charge-off, pre-sale interest in the debt.

The only way that the letter could conceivably be construed as false, deceptive, or misleading is if it is considered in conjunction with the previous letters sent by or on behalf of Defendants. But those initial letters are outside of the statute of limitations period, and Plaintiffs have not argued a continuing violation. Even if Plaintiffs had argued that the initial letters are part of a continuing violation, the evidence would belie that contention. Notably, the continuing violation doctrine "does not apply to a series of discrete acts, each of which is independently actionable, even if those acts form an overall pattern of wrongdoing." *Kovacs v. United States*, 614 F.3d 666, 676 (7th Cir. 2010) (internal quotation marks omitted). Here, the initial letters notified Plaintiffs that Defendants were attempting to collect the post-charge-off, pre-purchase interest, thereby providing Plaintiffs with all the information they needed to file a claim. Indeed, those initial communications lie at the core of this lawsuit—since they are the only communications provided to the Court that evidence false, deceptive, or misleading behavior. Because Plaintiffs' claims were ripe at the time they received the initial collection letters, there is no continuing violation. Without considering the initial collection letters, however, the March 21, 2014 letter is devoid of false, deceptive, or misleading information. Therefore, the March 21, 2014 letter cannot form the basis of a FDCPA claim. And consequently, Plaintiffs have no improper collection letters that fall within the statute of limitations period.

Because Plaintiffs have not shown the existence of a claim that falls within the statute of limitations period, Defendants' summary judgment motion is granted and Plaintiffs' summary judgment motion is denied.

## CONCLUSION

For the reasons discussed above, Plaintiffs' motion for summary judgment (Dkt. No. 105) is denied and Defendants' motion for summary judgment (Dkt. No. 108) is granted.

ENTERED:

Dated:  September 24, 2018

_____
Andrea R. Wood
United States District Judge